# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DONNA K. ADAMS,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:05cv00051 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | By:   PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

## I. Background and Standard of Review

Plaintiff, Donna K. Adams, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings

-1-

of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Adams protectively filed her initial application for SSI on or about March 21, 1994, based on physical and mental impairments. (Record, ("R."), at 49.)[1] Adams was found to be disabled and was awarded benefits as of November 6, 1994. (R. at 49.) However, by decision dated January 13, 2003, the Commissioner terminated Adams's benefits as of March 1, 2002, finding that her condition had improved, and that Adams no longer experienced any impairment or combination of impairments that met or equaled any criteria in the listing of impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 48-54.)

The record shows that Adams protectively filed a subsequent application for SSI on or about February 5, 2003, alleging disability as of March 27, 2002, based on left shoulder pain, hypertension, severe anxiety, severe depression, headaches, stomach problems, back pain, panic attacks, gastroesophageal reflux disease,

---

[1] The index of the administrative record indicates that the transcript of this hearing is not included in the administrative record to the court. (R. at i.)

-2-

("GERD"), shortness of breath and fatigue. (R. at 74-77, 86, 106.) Adams's claim was denied both initially and on reconsideration. (R. at 59-61, 65, 66-68.) Adams then requested a hearing before an administrative law judge, ("ALJ"). (R. at 69.) The ALJ held a hearing on June 10, 2004, at which Adams was represented by counsel. (R. at 25-44.)

By decision dated July 15, 2004, the ALJ denied Adams's claim.[2] (R. at 13-17.) The ALJ found that Adams had not engaged in substantial gainful activity since the filing of her application. (R. at 16.) The ALJ found that the medical evidence established that Adams had severe impairments, namely musculoskeletal complaints of pain and hypertension, but he found that Adams did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.) The ALJ further found that Adams's allegations regarding her limitations were not totally credible. (R. at 16.) The ALJ found that Adams had the residual functional capacity to perform light work[3] that did not require repetitive stooping, crawling and climbing and which allowed her to change positions every two hours. (R. at 16.) Thus, the ALJ found that Adams could not perform any of her past relevant work. (R. at 16.) Based on Adams's age, education and work experience and the testimony of a vocational expert, the ALJ

---

[2]Thus, for purposes of the claim currently before the court, only the evidence dating from January 14, 2003, the date after the ALJ's prior decision terminating Adams's SSI benefits, through July 15, 2004, the date of the ALJ's current decision, is relevant to a disability determination. To the extent included in this Memorandum Opinion, all other evidence is included in order to present a complete picture of Adams's impairments.

[3]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 416.967(b) (2005).

-3-

concluded that Adams could perform jobs existing in significant numbers in the national economy, including those of a cashier, an interviewer, a record clerk, a library clerk, an information clerk, an inventory clerk, and a general office clerk. (R. at 17.) Therefore, the ALJ found that Adams was not under a disability as defined in the Act, and that she was not eligible for SSI benefits. (R. at 17.) *See* 20 C.F.R. § 416.920(g) (2005).

After the ALJ issued his opinion, Adams pursued her administrative appeals, but the Appeals Council denied her request for review. (R. at 6-9.) Adams then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2005). The case is before this court on Adams's motion for summary judgment filed March 3, 2006, and the Commissioner's motion for summary judgment filed March 30, 2006.

## II. Facts

Adams was born in 1953, (R. at 74), which classifies her as a "person closely approaching advanced age " under 20 C.F.R. § 416.963(d). She has a high school education and past work experience as a pharmacy technician and a cashier. (R. at 39, 87, 92, 116.)

At her June 10, 2004, hearing, Adams testified that she had lower back pain that sometimes radiated in her lower legs. (R. at 29.) Adams testified that she could lift items weighing only five to 10 pounds before she experienced back pain. (R. at 29.) Adams further testified that she had a diminished ability to bend and stoop due to a

-4-

swollen and painful left knee that leaked blood and fluid. (R. at 29-30.)  Adams testified that she was able to stand or walk for five to 10 minutes and sit for 20 minutes. (R. at 30.)  Adams stated that she experienced pain in her shoulders and neck which inhibited her ability to lift anything over her head. (R. at 31.)  Adams further testified that she experienced strobe lighting in her right eye and  blurred vision. (R. at 37-38.)  Adams also testified that she suffered anxiety and depression which led to crying spells and a diminished ability to concentrate.  (R. at 33-34.)  Adams stated that she attended group therapy weekly and took medication for her anxiety and depression. (R. at 34.)  Adams testified that she held a drivers license and could drive for short distances, that she engaged in minor household activities and occasionally attended religious activities. (R. at 32-33, 36-37.)  Adams stated that her medication made her drowsy. (R. at 37.)

Robert Spangler, a vocational expert, also was present and testified at Adams's hearing. (R. at 38-41.)  Spangler classified Adams's past relevant work as a pharmacy technician and as a cashier as between light and medium[4] and semi-skilled with no transferability. (R. at 39.)  Spangler was asked to consider a hypothetical individual of Adams's age, education and work experience, who could perform light work with restrictions on repetitive stooping, crawling or climbing and which allowed frequent postural changes. (R. at 39.)  Spangler testified such an individual could perform jobs existing in significant numbers in the national economy, including those of a cashier, an interviewer, a record clerk, a factory messenger, a library clerk, an information

---

[4]Medium work involves frequent lifting or carrying of items weighing up to 25 pounds and occasional lifting of items weighing up to 50 pounds.  If an individual can perform medium work, she also can perform light and sedentary work. *See* 20 C.F.R. §  416.967(c) (2005).

clerk, an inventory clerk and a general office clerk. (R. at 40.) Spangler was then asked to assume the same facts as the first hypothetical plus the restrictions assessed by Dr. Michael Moore. (R. at 40, 263-73.) Spangler testified that there would be no jobs available for such an individual. (R. at 40.) Spangler was next asked to consider the first hypothetical in addition to a moderate limitation in the ability to respond appropriately to changes in a routine work setting and to respond appropriately to work pressures. (R. at 40-41, 172-94.) Spangler testified that there would be no jobs available for such an individual. (R. at 41.)

In rendering his decision, the ALJ reviewed records from Dr. R. Michael Moore, M.D.; B. Wayne Lanthorn, Ph.D., a licenced psychologist; St. Mary's Outpatient Clinic; Dr. Steven L. Vest, M.D.; Dr. Richard M. Surrusco, M.D., a state agency physician; Eugenie Hamilton, Ph.D., a state agency psychologist; Wise County Behavioral Health; and an opthomologist.[5]

The record shows that Adams saw a number of medical professionals from 1994 through March 2002. (R. at 117-43, 182-88, 195-206, 209-10, 282-300, 302-06.) However, the medical evidence from this time is relevant only to show Adams's medical history and was considered in a previous SSI claim. Adams received SSI benefits previously for depression, hypertension and gastroenteritis, but her benefits were terminated as of March 1, 2002. (R. at 49.)

From April 1, 2002, through April 26, 2004, Adams saw Dr. R. Michael Moore, M.D., complaining of chronic back pain, depression, hypertension, GERD,

---

[5]The name of this opthomologist is illegible. (R. at 306.)

hypercholesterolemia, degenerative disc disease, shoulder pain, left knee pain and anxiety. (R. at 172-94, 263-73.) Over this time period, Dr. Moore diagnosed Adams with hypertension, hypercholesterolemia, chronic back pain/strain, GERD, bilateral shoulder strain, osteoarthritis of the shoulders and degenerative disc disease, among other things. (R. at 172-88, 263, 265.) Dr. Moore treated Adams conservatively with medication. (R. at 172-88, 263-65.) Dr. Moore also diagnosed Adams with an anxiety disorder and depression, for which he prescribed Klonopin and Desyrel. (R. at 172-88, 263, 265.) On April 1, 2002, and again on February 3, 2003, Dr. Moore found that Adams was totally and permanently disabled. (R. at 176, 180.)

On April 1, 2002, Dr. Moore completed a Physical Ability To Do Work-Related Activities form for Adams. (R. at 192-94.) Dr. Moore found that Adams's ability to lift and carry objects was affected by osteoarthritis in both shoulders and degenerative disc disease. (R. at 192.) Dr. Moore found that Adams could occasionally[6] lift items weighing up to five pounds and frequently[7] lift items weighing up to two pounds. (R. at 192.) Dr. Moore found that Adams could stand or walk for a total of three hours in an eight-hour day, but could do so for only 20 minutes at a time. (R. at 192.) Dr. Moore found that Adams could sit for a total of four hours in an eight-hour workday, but could do so for only 30 minutes without interruption. (R. at 193.) Dr. Moore found that Adams was never able to climb, stoop, kneel or balance. (R. at 193.) Dr. Moore also found that Adams's ability to reach and to push and pull would be affected

---

[6]"Occasionally" is defined in the assessment as being from very little up to one-third of an eight-hour day. (R. at 192.)

[7]"Frequently" is defined in the assessment as being from one-third to two-thirds of an eight-hour day. (R. at 192.)

in the workplace because of shoulder and back problems. (R. at 193.) Dr. Moore found that Adams was restricted from working around heights, moving machinery, extreme temperatures, humidity and vibration. (R. at 194.)

On December 12, 2002, Dr. Moore completed a Mental Ability To Do Work-Related Activities form. (R. at 190-91.) Dr. Moore found Adams's mild anxiety with panic would slightly[8] impair her ability to carry out detailed instructions, her ability to make simple work-related decisions and her ability to interact appropriately with supervisors and co-workers. (R. at 190-91.) Dr. Moore found that Adams's ability to respond appropriately to work pressures and changes in a routine work setting, would be moderately[9] affected. (R. at 191.) In all other areas assessed, Adams was found to have no limitations. (R. at 190-91.) Dr. Moore found that Adams was able to manage benefits in her own interest. (R. at 191.)

Adams saw Dr. Moore on April 26, 2004, for a second evaluation of both her physical and mental abilities to do work-related activities. (R. at 268-73.) Dr. Moore found that Adams was able to occasionally and frequently lift or carry items weighing less than 10 pounds. (R. at 268.) Dr. Moore found that Adams was able to stand and/or walk for less than two hours in an eight-hour workday. (R. at 268.) Dr. Moore also found that Adams was able to sit less than six hours in an eight-hour workday. (R. at 269.) Dr. Moore found that Adams was so limited because of chronic back

---

[8]A slight impairment is defined in the assessment as "some mild limitations in this area, but the individual can generally function well." (R. at 190.)

[9] A moderate impairment is defined in the assessment as "moderate limitation in this area but the individual is still able to function satisfactorily." (R. at 190.)

-8-

strain, degenerative disc disease, osteoarthritis of the left knee and chronic cervical strain. (R. at 269.)  Dr. Moore  found that Adams could never climb, balance, kneel, crouch, crawl or stoop. (R. at 269.)  Dr. Moore found that Adams had a limited ability to reach in all directions, but an unlimited ability to handle, finger and feel objects. (R. at 270.)  Dr. Moore also found that Adams had no limitations on her abilities to see, to hear or to speak. (R. at 270.)  Dr. Moore found that Adams  was limited from working around vibration, humidity/wetness and hazards. (R. at 271.)  Regarding Adams's mental abilities, Dr. Moore found that Adams's depression and anxiety would slightly impair her ability to understand and remember short, simple instructions. (R. at 272.)  Dr. Moore also found that Adams's abilities to make judgments on simple work-related decisions, to carry out simple instructions and to interact appropriately with co-workers were  moderately affected. (R. at 272-73.)  Dr. Moore also found that Adams's abilities to understand and remember detailed instructions, to carry out detailed instructions and to respond appropriately to changes in a routine work setting were extremely[10] impaired. (R. at 272-73.)  Dr. Moore found that Adams was markedly[11] limited in her ability to interact with the public and with supervisors and to respond appropriately to work pressures. (R. at 273.)  Dr. Moore found that Adams was able to manage the benefits in her own interest. (R. at 273.)

On February 29, 2000, Adams saw an opthomologist[12] for flashes of light and

---

[10]An extreme impairment is defined in the assessment as a major limitation in this area. There is no useful ability to function in this area. (R. at 272.)

[11]A marked impairment is defined in the assessment as a serious limitation.  The ability to function is severely limited, but not precluded. (R. at 272.)

[12] The identity of the opthomologist treating Adams is unclear. (R. at 306.)

black spots in the left eye. (R. at 302-03.)  The opthomologist diagnosed Adams with possible peripheral vascular disease in her left eye. (R. at 303.)  On May 24, 2004, Adams complained of blurred vision and flashes of light to the opthomologist. (R. at 305.)  On June 8, 2004, in a follow-up visit, the opthomologist noted that Adams was a possible glaucoma suspect. (R. at 306.)

On December 29, 2001, Adams was examined by B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist. (R. at 201-06.)  Lanthorn diagnosed Adams with a mild, late-onset dysthymic disorder. (R. at 205.)  Lanthorn  assessed a then-current Global Assessment of Functioning, ("GAF"),[13] score of 60 to 65.[14] (R. at 205.)  Lanthorn indicated that Adams had no significant limitations on her ability to understand and remember simple and/or detailed instructions. (R. at 205.)  Adams was able to make simple work-related decisions and could remember and carry out instructions. (R. at 205.)  Lanthorn maintained that Adams had no significant limitations to maintain socially appropriate behavior. (R. at 205.)  Lanthorn also indicated that Adams had the ability to respond to changes in the workplace and be aware of normal hazards. (R. at 205.)  Lanthorn also found Adams capable of setting realistic goals and making plans independently of others. (R. at 205.)

---

[13]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).  A GAF of 51-60 indicates that the individual has "[m]oderate symptoms...OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

[14]A GAF of 61-70 indicates that the individual has "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but [is] generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

On March 11, 2002, Adams presented to St. Mary's Outpatient Clinic for pain and pressure in both ears. (R. at 209.) At St. Mary's, Adams was diagnosed with uncontrolled hypertension and a headache. (R. at 210.) Adams was treated conservatively with medication and was advised to decrease stress in her home life. (R. at 210.) On January 23, 2004, Adams complained of pain in her lower left leg. (R. at 207.) St. Mary's performed an x-ray and found mild distention of the suprapatellar bursa consistent with a small effusion and a mild narrowing of the medial compartment of the knee. (R. at 214-15.) On February 3, 2004, an ultrasound was performed on her lower left extremity, but no abnormalities were found. (R. at 211-13.)

On June 5, 2002, Dr. Steven L. Vest, M.D., saw Adams for bowel movement problems and intermittent abdominal bloating. (R. at 217-19.) Dr. Vest recommended an upper endoscopy and colonoscopy. (R. at 219.) On June 12, 2002, Dr. Vest performed a colonoscopy and diagnosed Adams with mild internal hemorrhoids and rectal irritation. (R. at 224.) The same day, Dr. Vest performed a esophagogastroduodenoscopy with biopsies. (R. at 221.) Dr. Vest diagnosed Adams with mild acid peptic disease with gastroesophageal reflux disease. (R. at 221.)

On July 28, 2003, Dr. Richard M. Surrusco, M.D., a state agency physician, completed a physical residual functional capacity assessment. (R. at 226-33.) Dr. Surrusco found that Adams could perform light work diminished by a limitation in her upper extremities to push and pull. (R. at 227.) Dr. Surrusco further found that Adams could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 228.) Dr. Surrusco found that Adams was limited in her ability to reach in all directions. (R. at

-11-

229.) Dr. Surrusco found no visual, communicative or environmental limitations. (R. at 229-30.) Thus, Dr. Surrusco concluded that Adams was capable of performing light work with limited overhead lifting. (R. at 231.)

On July 28, 2003, Eugenie Hamilton, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Adams suffered from a nonsevere anxiety disorder. (R. at 235-51.) Hamilton found that Adams had mild limitations in her ability to maintain social functioning. (R. at 245.) Hamilton also found that Adams had mild limitations in maintaining concentration, persistence or pace. (R. at 245.) Hamilton found Adams's mental allegations to be minimally credible, and she concluded that Adams would be able to perform most activities of daily living without mental restrictions. (R. at 247.) These findings were affirmed by Julie Jennings, Ph.D., another state agency psychologist, on February 26, 2004. (R. at 235.)

From February 11, 2004, to May 3, 2004, Adams saw James Kegley, M.S., of Wise County Behavioral Health, with complaints of depression. (R. at 275-81.) At each visit, Kegley found Adams to have a mildly depressed mood with a congruent affect. (R. at 276-77, 280.) The depression arose from the withdrawal of her SSI benefits and her family life. (R. at 276-77, 280.) Kegley diagnosed Adams with an adjustment disorder with depression and a GAF score of 50.[15] (R. at 275-81.) Kegley recommended that Adams join a diversion/relaxation group and a Life Changes group. (R. at 276, 280.)

---

[15]A GAF of 41-50 indicates that the individual has "[s]erious symptoms... OR any serious impairment in social, occupational, or school functioning...." DSM-IV at 32.

On February 25, 2004, Dr. Michael J. Hartman, M.D., a state agency physician, completed a physical residual functional capacity assessment. (R. at 252-60.) Dr. Hartman found that Adams could perform medium work. (R. at 253.) Dr. Hartman found that Adams had an unlimited ability to push and pull. (R. at 253.) He further found that Adams had no postural, manipulative, visual, communicative or environmental limitations. (R. at 254-56.) Dr. Hartman concluded by finding Adams's description of her limitations only partially credible, and he noted that the evidence did not support a finding of total disability. (R. at 257.)

## III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2005).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the

-13-

Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated July 15, 2004, the ALJ denied Adams's claim. (R. at 13-17.) The ALJ found that the medical evidence established that Adams had severe impairments, namely musculoskeletal complaints of pain and hypertension, but he found that Adams did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.) The ALJ found that Adams had the residual functional capacity to perform light work that did not require repetitive stooping, crawling and climbing and which allowed her to change positions every two hours. (R. at 16.) Based on Adams's age, education and work experience and the testimony of a vocational expert, the ALJ concluded that Adams could perform jobs existing in significant numbers in the national economy, including those of a cashier, an interviewer, a record clerk, a library clerk, an information clerk, an inventory clerk, and a general office clerk. (R. at 17.) Therefore, the ALJ found that Adams was not under a disability as defined in the Act, and that she was not eligible for SSI benefits. (R. at 17.) *See* 20 C.F.R. § 416.920(g) (2005).

In her brief, Adams argues that the ALJ's decision is not supported by substantial evidence. Specifically, Adams argues that the ALJ erred by failing to

-14-

adhere to the treating physician rule and grant controlling weight to the opinions of Dr. Moore. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 6-10.) Adams also argues that the ALJ erred by failing to find that she suffered from a severe nonexertional impairment. (Plaintiff's Brief at 10-13.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Adams first argues that the ALJ erred by failing to adhere to the treating

-15-

physician rule and grant controlling weight to Dr. Moore's opinions. (Plaintiff's Brief at 6-10.) For the following reasons, I find this argument unpersuasive. The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. *See McLain*, 715 F.2d at 869. The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 416.927(d) (2005). However, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

On two separate occasions, specifically, on April 1, 2002, and again on February 3, 2003, Dr. Moore found that Adams was totally and permanently disabled. (R. at 176, 180.) I first note that the April 1, 2002, conclusion was considered in Adams's prior claim. In any event, however, I find that these conclusions simply are not supported by Dr. Moore's own treatment notes, by any clinical or diagnostic evidence or by the other objective medical evidence of record. Although Adams alleges that she is disabled due to low back pain, and although the ALJ found that Adams suffers from severe musculoskeletal pain, there is no objective evidence to support that this is a disabling impairment. For instance, as correctly noted by the Commissioner in her brief, there is no radiographic or other diagnostic evidence contained in the record regarding Adams's back impairment. Moreover, Adams has

not been referred to an orthopaedic specialist and has undergone only conservative treatment with medications. As noted by the Commissioner, there is no evidence of nerve root compression or other neurological deficits to suggest disc herniation. Physical examinations revealed nothing more than some tenderness and stiffness of the back with some restriction of movement. (R. at 173, 176-77, 180, 182-83, 185.) Dr. Moore diagnosed Adams with degenerative disc disease and chronic back pain. (R. at 172-74, 176-86, 188.) Dr. Moore's treatment notes do not reveal the placement of any specific restrictions on Adams's exertional abilities. However, despite his conservative treatment and lack of restrictions reflected in his treatment notes, Dr. Moore opined on the two occasions noted above that Adams was totally and permanently disabled. (R. at 176, 180.) He further found on April 1, 2002, that Adams could lift items weighing up to only five pounds, could stand and/or walk for only three hours in an eight-hour workday, but for only 20 minutes without interruption, could sit for four hours in an eight-hour workday, but for only 30 minutes without interruption, could never climb, stoop, kneel or balance and was limited in her abilities to reach, push and pull. (R. at 192-94.) Likewise, on April 26, 2004, Dr. Moore opined that Adams could lift items weighing less than 10 pounds, could stand and/or walk for less than two hours in an eight-hour workday, could sit for less than six hours in an eight-hour workday, could never climb, stoop, kneel, crawl or balance and was limited in her abilities to reach in all directions. (R. at 268-71.) Thus, I find that substantial evidence supports the ALJ's finding that Dr. Moore's opinions that Adams was totally and permanently disabled on April 1, 2002, and April 26, 2004, are not supported by his own treatment notes.

Lastly, Dr. Moore's opinion is not supported by the opinions of the state agency

physicians. Specifically, Dr. Surrusco concluded in July 2003 that Adams could perform light work with limited overhead lifting and a diminished ability to occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 226-33.) Likewise, in February 2004, Dr. Hartman found that Adams could perform medium work. (R. at 252-60.) Thus, substantial evidence supports the ALJ's finding that Dr. Moore's opinions regarding Adams's residual functional capacity are inconsistent with the other evidence of record.

For all of the foregoing reasons, I find that substantial evidence supports the ALJ's decision not to grant controlling weight to Dr. Moore's opinions.

Adams next argues that the ALJ erred by failing to find that she suffers from a severe nonexertional impairment. (Plaintiff's Brief at 10-13.) Again, I find this argument unpersuasive. The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 416.921(a) (2005). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 416.921(b) (2005). The Fourth Circuit held in *Evans v. Heckler*, that "'"[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."'" 734 F.2d 1012,

-18-

1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

I find that substantial evidence supports the ALJ's failure to find that Adams suffered from a severe nonexertional impairment. The record reveals that Dr. Moore diagnosed Adams with an anxiety disorder on seven occasions from November 1, 2002, through April 26, 2004. (R. at 172-77, 263.) Dr. Moore diagnosed Adams with depression on February 3, 2003. (R. at 176.) He did not refer Adams to a mental health specialist, but treated her conservatively with Klonopin and Desyrel. (R. at 172-77, 263.) Moreover, Dr. Moore makes no mention in his treatment notes regarding the reasons for making such diagnoses, other than a notation on February 3, 2003, that Adams appeared to be experiencing increased stress and was highly agitated. (R. at 176.) Aside from that, on November 1, 2002, and on April 7, 2003, Dr. Moore noted in the review of symptoms section which, apparently is based on a patient's subjective complaints, that Adams experienced anxiety and panic attacks. (R. at 175, 177.) Nonetheless, in a December 2002 mental assessment, Dr. Moore concluded that Adams's mild anxiety with panic would only slightly impair her ability to carry out detailed instructions, her ability to make simple work-related decisions and her ability to interact appropriately with supervisors and co-workers. (R. at 190-91.) He found that Adams's ability to respond appropriately to work pressures and changes in a routine work setting would be moderately affected. (R. at 191.) In all other areas assessed, Adams was found to have no limitations. (R. at 190-91.) Again, in an April 2004 assessment, Dr. Moore concluded that Adams's depression and anxiety would slightly impair her ability to understand and remember short, simple instructions. (R. at 272.) He further found that her abilities to make judgments on

-19-

simple work-related decisions, to carry out simple instructions and to interact appropriately with co-workers were moderately affected. (R. at 272-73.) Dr. Moore also found that Adams's abilities to understand and remember detailed instructions, to carry out detailed instructions and to respond appropriately to change in a routine work setting were extremely impaired. (R. at 272-73.) Dr. Moore found that Adams was markedly impaired in her ability to interact with the public and with supervisors and to respond appropriately to work pressures. (R. at 273.)

Adams did not see a mental health counselor at Wise County Behavioral Health until February 2004, nearly two years after Dr. Moore first diagnosed her with anxiety. Adams was seen on three occasions from February 2004 through April 2004, and a social worker diagnosed her with an adjustment disorder with mixed anxiety and depressed mood and a GAF score of 50. (R. at 275-81.) It appears from the treatment notes that Adams's depression arose from the withdrawal of her SSI benefits, as well as her family life. (R. at 276-77, 280.) Thus, it appears that her depression could be characterized as merely situational in nature. Her mood was consistently described as mildly depressed with a congruent affect. (R. at 276-77, 280.)

Although Adams claims that Dr. Moore's opinion is supported by the notes from Wise County Behavioral Health, I first note that Kegley, a social worker, is not an acceptable medical source under the regulations. *See* 20 C.F.R. § 416.913(a) (2005). According to the regulations, sources who can provide evidence to establish an impairment include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists. *See* 20 C.F.R. § 416.913(a). Therefore, under the regulations, this evidence should not

-20-

be considered in determining whether the ALJ's mental residual functional capacity assessment is supported by substantial evidence. In any event, I further note that Kegley's diagnosis appears to be improperly based on Adams's subjective complaints, as the treatment notes contain references only to Adams's depression stemming from the cessation of SSI benefits and certain other situational stressors. Moreover, as noted above, Kegley noted only a mildly depressed mood and congruent affect. (R. at 276-77, 280.) Thus, even if Kegley were considered an acceptable medical source under the regulations, I find that his notes do not support the existence of a severe nonexertional impairment.

Finally, state agency psychologist Hamilton's July 2003 assessment does not support a finding of a severe nonexertional impairment. Specifically, Hamilton concluded that Adams suffered from a *nonsevere* anxiety disorder. (R. at 235-51.) She further found that Adams was only mildly limited in her ability to maintain social functioning and to maintain concentration, persistence or pace. (R. at 245.) Hamilton found Adams's mental allegations only minimally credible, and she opined that Adams would be able to perform most activities of daily living without mental restrictions. (R. at 247.)

For the foregoing reasons, I find that the ALJ did not err by failing to find that Adams suffered from a severe nonexertional impairment.

### III. Conclusion

For the foregoing reasons, Adams's motion for summary judgment will be

denied, the Commissioner's motion for summary judgment will be granted and the Commissioner's decision denying benefits will be affirmed.

I further deny Adams's request to present oral argument based on my finding that it is not necessary in that the parties have more than adequately addressed the relevant issues in their written arguments.

An appropriate order will be entered.

DATED:      This 13th day of June 2006.

/s/  *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

Case 2:05-cv-00051-PMS   Document 15   Filed 06/13/06   Page 22 of 22   Pageid#: 96